NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| DAVID O'KEEFE,<br>*On behalf of himself and all other similarly situated persons*,<br><br>                               **Plaintiff,**<br><br>v.<br><br>HESS CORPORATION, JAMES D. CHAMBERLAIN, CAROL DURST, AND JOHN/JANE DOES,<br><br>                              **Defendants.** | Civil Action No. 10-2598 (WJM)<br><br><br><br><br><br>**REPORT AND RECOMMENDATION** |

F<span style="font-variant:small-caps">ALK</span>, U.S.M.J.

      Before the Court is Plaintiff's motion to remand this case to state court. [CM/ECF No. 8.] Defendants oppose the motion. The Honorable William J. Martini, U.S.D.J., referred the motion to the Undersigned for Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). Oral argument was not heard. Fed. R. Civ. P. 78(b). For the reasons set forth below, it is respectfully recommended that Plaintiff's motion to remand be **granted**.

### BACKGROUND

**A.**    **Factual**

      On April 15, 2010, Plaintiff, David O'Keefe ("Plaintiff"), filed a two count complaint in New Jersey Superior Court against Defendant Hess Corporation, alleging a putative class action for

unpaid wages and overtime benefits under the New Jersey Wage and Hour Law ("NJWHL"), N.J.S.A. § 34:11-56a, *et seq.*, and an individual claim for violations of the New Jersey Law Against Discrimination ("LAD"), N.J.S.A. 10:5-1, *et seq*. Plaintiff is a New Jersey citizen and is employed by Hess in its Port Reading, New Jersey refinery. Hess is a Delaware corporation with its principal place of business in New York.

The Complaint alleges that Plaintiff and all current and former Hess employees at the company's New Jersey refineries are not paid for all hours worked, including time spent: (1) "donning" and "doffing" protective equipment such as fire retardant clothing, safety shoes, hard hats, and safety glasses; (2) walking to and from their work locations; and (3) consulting with workers before and after shifts. Plaintiff claims such activities are significant and compensable because they are principal, integral, and indispensable parts of the employees' duties. With respect to the individual discrimination claim, the Complaint alleges that Plaintiff has a disabling medical condition and that Defendants discriminated against him because of his disability and failed to reasonably accommodate him.

**B.**     **Procedural**

On May 20, 2010, Hess removed the action to this Court pursuant to 28 U.S.C. § 1441, asserting both original diversity jurisdiction under 28 U.S.C. § 1332 and federal question jurisdiction under 28 U.S.C. § 1331. Hess alleged diversity jurisdiction based on Plaintiff's status as a New Jersey citizen and the company's status as a citizen of Delaware and New York. (Notice of Removal ("NOR") at ¶¶ 3-4.) Hess also claimed federal question jurisdiction pursuant to the doctrine of complete federal preemption. (NOR at ¶¶ 11-12.) At all times during his employment, Plaintiff was a member of a union, first the International Union of Operating Engineers Local 825 and later the

Local 106 of the United Electrical, Radio, and Machine Workers of America.[1]  Hess's notice of removal states that the terms of Plaintiff's employment are subject to a series of collectively bargained agreements governing the workplace between Hess and its employees.  Accordingly, Hess argues that the NJWHL claim is completely preempted by Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, *et seq*. ("LMRA") because resolution of the claim would, it contends, necessarily depend upon an analysis of the applicable collective bargaining agreement ("CBA").

Following removal, on May 27, 2010, Plaintiff amended his Complaint as a matter of right pursuant to Federal Rule of Civil Procedure 15(a)(1) to include: (1) a direct claim against Hess's Director of Labor Relations, James D. Chamberlain, for violations of the New Jersey Wage and Hour Law; and (2) an individual claim against Hess's Director of Human Resources, Carol Durst, for violations of the New Jersey Law Against Discrimination.  Both Chamberlain and Durst are citizens of New Jersey.  Their addition as Defendants destroyed diversity.

On June 11, 2010, Plaintiff moved to remand, arguing that the Amended Complaint contains only state law claims and that the parties are not diverse.

Defendant Hess, now joined by Defendants Chamberlain and Durst (collectively "Defendants"), oppose the motion to remand, arguing primarily that Plaintiff's NJWHL claim is preempted by Section 301 of LMRA.  In addition, Defendants vaguely argue that diversity jurisdiction remains because Chamberlain and Durst have been fraudulently joined in an effort to defeat diversity.

---

[1] Defendants state that Plaintiff has been employed by Hess since 1991 but is currently on disability leave. (Declaration of James D. Chamberlain, Jr., at ¶ 18.) From 1958 until 2006, Local 825 was the exclusive bargaining unit for Hess's refinery employees. (Id. at ¶ 3.) In the summer of 2006, Local 825 was replaced with Local 106. (Id.) At all times, Plaintiff was and remains a member of the Union. (Id.)

The primary issue to be resolved is whether the LMRA preempts Plaintiff's NJWHL claim. If not, the secondary issue is whether there remains diversity jurisdiction. The Court concludes that there is no preemption-based federal jurisdiction, nor is there proper diversity jurisdiction. Therefore, remand is recommended.

**C.    Parties' Arguments**

Plaintiff argues that the NJWHL claim is a statutory state law claim brought pursuant to the laws of the State of New Jersey; that he seeks only to enforce his substantive rights under the New Jersey law; and that his claim is not dependent upon and does not implicate the CBA. (Pl.'s Br. at 13) ("[The class] is seeking to invoke their statutory right to compensation and overtime under the New Jersey Wage and Hour Law . . . and does not seek any interpretation whatsoever of the collective bargaining agreement."); (Pl.'s Reply Br. at 2, 10, 13-14.) According to Plaintiff, he is simply trying to recover for violations of substantive rights created by state law, which apply generally to all individual employees. (Pl.'s Reply Br. at 13-14.) In addition, Plaintiff claims that the individual Defendants have not been fraudulently joined and that there is no diversity. (Pl.'s Brief at 6-7; Pl.'s Reply Br. at 23.)

Defendants counter that Plaintiff's NJWHL claim is preempted. They claim that the NJWHL does not provide a statutory basis to recover wages for donning and doffing equipment, walking to work, and conferring with shift personnel. (Defs.' Br. at 10.) Thus, Defendants argue that Plaintiff must attempt to recover, if at all, under the provisions of the CBA and the LMRA. (Defs.' Br. at 10, 14-15.) They also claim that the central issue in this case is what constitutes compensable hours worked, and that a reference to the CBA is necessary to resolve that question. (Defs.' Br. 4, 10.) Finally, Defendants claim that the individual defendants were fraudulently joined to defeat diversity. (Defs.' Br. at 20.)

## DISCUSSION

A.     **Removal Standard**

The federal removal statute provides that "[e]xcept as otherwise provided by Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed . . . to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). "[T]he party asserting federal jurisdiction in a removal case bears the burden of showing, at all stages of the litigation, that the case is properly before the federal court." Frederico v. Home Depot, 507 F.3d 188, 193 (3d Cir. 2007). Removal is strictly construed and all doubts are resolved in favor of remand. See Samuel-Bassett v. Kia Motors Am., Inc., 357 F.3d 392, 396 (3d Cir. 2004).

B.     **Federal Question Jurisdiction**

A district court has original jurisdiction over cases that "arise under" federal law. See 28 U.S.C. § 1331, 1441(a). In this regard, pursuant to the "well-pleaded complaint" rule, a plaintiff is ordinarily entitled to remain in state court so long as its complaint does not allege a federal claim on its face. See Caterpillar, Inc. v. Williams, 482 U.S. 386, 392 (1987); Franchise Tax Bd. of Cal. v. Contr. Laborers Vacation Tr. for S. Ca., 463 U.S. 1, 10 (1983) ("[A] defendant may not remove a case to federal court unless the plaintiff's complaint establishes that the case arises under federal law."). Federal jurisdiction cannot be established by a federal defense or by challenging the merits of a claim. See Caterpillar, 482 U.S. at 393. However, an exception to the well-pleaded complaint rule is the doctrine of complete preemption. See, e.g., Lazorko v. Pa. Hosp., 237 F.3d 242, 248 (3d Cir. 2000) ("One exception to [the well-pleaded complaint rule] is for matters that Congress has so completely preempted that any civil complaint that falls within this category is necessarily federal in character."). The doctrine of complete preemption "creates removal jurisdiction even though no

5

federal question appears on the face of the plaintiff's complaint." Id.

Here, Defendants argue that despite the absence of an express federal claim on the face of the Complaint, federal jurisdiction is created by the complete preemption of Plaintiff's NJWHL claim by Section 301 of the LMRA.

**C.    LMRA § 301 Preemption**

Section 301 of the Labor Management Relations Act provides:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a).

The purpose of Section 301 is to "mandate resort to federal rules of law in order to ensure uniform interpretation of collective-bargaining agreements, and thus to promote the peaceable consistent resolution of case management disputes." Lingle v. Norge Div. of Magic Chef, Inc., 486 U.S. 399, 404 (1988). Thus, any claim that seeks to challenge an aspect of a collective-bargaining agreement must be brought under Section 301. See Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 210 (1985). Section 301 preempts claims "founded directly on rights created by collective bargaining agreements, and also claims substantially dependent upon an analysis of a collective bargaining agreement." See Lingle, 486 U.S. at 410 n.10. However, preemption should not be lightly inferred, and does not arise simply because a collective-bargaining agreement may be involved. See id. at 412; see also e.g., Bonilla v. Starwood Hotels Resorts Worldwide, Inc., 407 F. Supp. 2d 1107, 1111 (C.D. Cal. 2005) ("If the claim is plainly based on state law, Section 301 preemption is not mandated simply because the defendant refers to the CBA in mounting a defense." (citing Cramer v. Consol. Freightways, Inc., 255 F.3d 683, 692 (9th Cir. 2001) (en banc))).

6

When a claim derives from an independent, substantive provision of state law, preemption has no application.  See Caterpillar, 482 U.S. at 395.  The Supreme Court has specifically explained the difference between claims that are based upon rights created through a CBA and those separate rights that are provided to all individual employees through substantive state or federal laws:

> **In [*Allis-Chalmers*] and *Lingle*, we underscored the point that § 301 cannot be read broadly to pre-empt nonnegotiable rights conferred on individual employees as a matter of state law**, and we stressed that it is the *legal character of the claim*, as 'independent' of rights under the collective-bargaining agreement (and not whether a grievance arising from 'precisely the same set of facts' could be pursued) that decides whether a state cause of action may go forward.

Livadas v. Bradshaw, 512 U.S. 107, 123 (1994) (citations omitted) (emphasis added); Allis-Chalmers Corp., 471 U.S. at 213 (inquiry must focus on "whether [the state law claim] confers nonnegotiable state-law rights on employers or employees independent of any right established by contract, or, instead, whether evaluation of the [state law] claim is inextricably intertwined with consideration of the terms of the labor contract.").  If the facts of a given case could give rise to an action under a CBA as well as a separate state law claim, preemption does not attach.  See Lingle, 486 U.S. at 408 (noting, in the event resolution of a state law claim "involves attention to the same factual considerations as the contractual determination, such parallelism does not mandate preemption").

Ultimately, in order to remove a state law claim as preempted by Section 301, the Supreme Court has articulated the following standard: "*when the resolution of a state law claim is substantially dependent upon analysis of the terms of an agreement* made between the parties in a labor contract, *that claim must either be treated as a Section 301 claim* or dismissed as pre-empted by federal contract law."  Allis-Chalmers Corp., 471 U.S. at 202 (citing Avco Corp. v. Machinists, 390 U.S. 557, 559 (1968)) (emphases added).

D.  **Plaintiff's Wage and Hour Claim is Not Preempted**

Plaintiff's Complaint advances a pure statutory state law claim based upon the notion that New Jersey's law provides him with minimum, guaranteed rights to be paid for all time worked. The Complaint does not refer to CBA; it does not seek to enforce rights created by the CBA; and does not seek to interpret any provisions contained in the CBA. Rather, Plaintiff claims that New Jersey substantive law provides him, and all other individual employees in New Jersey, with the "nonnegotiable" right to be paid for all time "worked," which, he contends, includes time spent donning and doffing protective equipment, walking to and from the work area, and conferring with other workers before and after shifts. Defendants dispute that the New Jersey statute requires compensation for these activities. Thus, the dispute is about the scope of the NJWHL.

A state law claim is preempted when resolution of the claim is substantially dependent upon the interpretation of a collective-bargaining agreement, or when the right to recovery is created under the agreement. See Allis-Chalmers Corp., 471 U.S. at 202. Here, there is no need to interpret the collective-bargaining agreement, let alone substantially. This is because there is no dispute over what the CBA states, and there is no dispute over Plaintiff's job duties that would require interpretation of the CBA. The only determination that must be made is whether the NJWHL, regardless of any language in the CBA, entitles Plaintiff to recover wages and overtime for his work activities. If not, Plaintiff will likely *lose* the merits of the case. If so, then Plaintiff would have a nonnegotiable right to compensation that would trump any contrary language in the CBA. See, e.g., Hawaiian Airlines, Inc. v. Norris, 512 U.S. 246, 260 (1994) ("Clearly, § 301 does not grant the parties to a collective bargaining agreement the ability to contract for what is illegal under state law." (citing Allis Chalmers Corp., 471 U.S. at 211-12)). That is the issue in this case, and it has nothing

8

to do with the CBA or any language in it.[2]  Under such circumstances, there is no basis for preemption.  See, e.g., Sellars v. Safeway, Inc., No. 05-1013, 2006 WL 2729269, at *3 (D. Or. Sept. 22, 2006) ("Despite defendant's assertions to the contrary, a determination regarding whether plaintiffs should be compensated for time previously spent at the bread plant preparing for work will not require an interpretation of any of the applicable employment agreements.  The evaluation of the possible merits of plaintiff's claims is in no way dependent upon the meaning of any term in any of the CBAs or employment agreements entered into by or on behalf of the plaintiffs.  Therefore, defendant's reliance upon § 301 to establish federal jurisdiction is insufficient.").

Plaintiff premises his claim on New Jersey law.  Plaintiff could have pursued remedies under the CBA and the LMRA.  He did not.  Instead, he decided to endeavor to establish a basic right under the state statute to be paid for donning and doffing protective equipment and conferring with other shift workers, regardless of the language in the CBA.  That was his choice as the "master of his complaint."  His choice may not serve him well on the merits, but it is entitled to deference under

---

[2] Defendants argue that it will be necessary to interpret various provisions of the CBA to determine what constitutes compensable hours worked.  (Defs.' Br. 4.)  The Court disagrees.  The applicable New Jersey regulations define "Work Hours" as "the actual hours suffered or permitted to work."  N.J.A.C. 12:56-2.1.  It is unchallenged that Plaintiff, and the putative class members, engage in the disputed activities while at work.  Thus, the only issue is whether or not such activities are compensable as "hours worked" under the New Jersey law.  That is a matter of state law interpretation, not interpretation of the CBA.  As Plaintiff correctly notes, at absolute most, it would only be potentially necessary to reference (not interpret) the CBA in the event he were to prevail on the merits and it become necessary to calculate damages.  (Pl.'s Reply Br. at 10-11.)  That potential and minimal reference to the CBA for purposes of damages calculation does not support § 301 preemption.  See, e.g., Spoerle v. Kraft Foods Global, 527 F. Supp. 2d 860, 871 (W.D. Wis. 2007) ("Defendant may have to calculate the hours and rate of pay to determine damages, but that is not enough to trigger preemption."); Bonilla, 407 F. Supp. 2d at 1113 (referring to CBA to calculate damages provides no basis for preemption); cf. Livadas, 512 U.S. at 124 ("[W]hen the meaning of contract terms is not subject of the dispute, the bare fact that collective bargaining agreement will be consulted in the course of a state law litigation plainly does not requite the claim to be extinguished." (citing Lingle, 486 U.S. at 413 n.12 ("A collective bargaining agreement may, of course, contain information such as rate of pay . . . that might be helpful in determining the damages to which a worker prevailing in a state law suit may be entitled."))).

9

the well-pleaded complaint rule. Analogous case law supports Plaintiff's position.

In Barrentine v. Arkansas-Best Freight Sys., Inc., 450 U.S. 728 (1981), the Supreme Court considered whether a plaintiff could bring a free-standing employment based FLSA claim, despite the existence of a CBA allegedly governing the disputed issue.[3] There, the plaintiffs were unionized truck drivers who were required to conduct unpaid safety inspections of their trucks before embarking on any trips. Id. at 730. The plaintiffs claimed that the CBA required that they be paid for "all time spent in [defendant's] service," and filed a grievance pursuant to the CBA to recover allegedly unpaid wages, which was rejected. Id. at 731-32. In response, the plaintiffs filed a claim in federal court under the FLSA based upon the same conduct and seeking pay for the same activities. Id. at 732. The lower courts held that the FLSA claim was improper and should have been submitted to arbitration under the CBA's grievance procedures. The Supreme Court reversed, explaining the difference between claims under a collective agreement and those that arise under a separate statute of general application:

> *The FLSA rights petitioners seek to assert in this action are independent of the collective bargaining process. They devolve on petitioners as individual workers, not as members of a collective organization. They are not waivable.* Because Congress intended to give individual employees the right to bring their minimum wage claims under the FLSA in court, and because these congressionally

---

[3] Although Barrentine involved the FLSA, not the NJWHL, the two statutes are substantially similar. See, e.g., Crisostomo v. Exclusive Detailing, Inc., No. 08-1771, 2010 WL 2640183, at * 5 (D.N.J. June 28, 2010) ("Notably, because the NJWHL overtime compensation and record-keeping requirements are modeled after and nearly identical to their analogous Fair Labor Standards Act regulations, judicial interpretations construing FLSA are applicable."). Moreover, the case is analogous because the Supreme Court has expressly stated that there is no apparent basis to treat federal and state law claims regarding minimum employment standards any differently. See Metro. Life Ins. Co. v. Mass., 471 U.S. 724, 755-56 (1985) ("Nor has Congress ever seen fit to exclude unionized workers and employers from laws establishing federal minimal employment standards. *We see no reason to believe that for this purpose Congress intended state minimum labor standards to be treated any differently from minimum federal standards*." (emphasis added)).

> granted FLSA rights are best protected in a judicial rather than in an arbitral forum, we hold that petitions claims is not barred by the prior submission of their grievances to the contractual dispute resolution procedures. . . .
>
> In submitting his grievance to arbitration, an employee seeks to vindicate his contractual right under a collective-bargaining agreement. By contrast, in filing a lawsuit under [the statute], an employee asserts independent statutory rights accorded by Congress. The distinctly separate nature of these contractual and statutory rights is not vitiated merely because both were violated as a result of the same factual occurrence.

Id. at 746 (quotation omitted) (emphasis added).

Likewise, in Caterpillar Inc. v. Williams, 482 U.S. 386 (1987), the Supreme Court unanimously held that removal of a state law breach of contract claim as purportedly preempted by § 301 of the LMRA was improper, even though the employees were unionized and their employment governed by a CBA. See id. at 388. The Court noted that the plaintiff's decision to sue only under the state law theory, eschewing a claim under the CBA, was entitled to deference under the well-pleaded complaint rule. Id. at 395. In so doing, the Court rejected the argument Defendants advance here:

> Caterpillar's basic error is its failure to recognize that a plaintiff covered by a collective-bargaining agreement is permitted to assert legal rights *independent* of that agreement, including state-law contact rights, so long as the contract relied upon is *not* a collective bargaining agreement.

Id. at 396 (citing Allis-Chalmers, Corp., 471 U.S. at 202).[4]

---

[4] District Judge Martini acknowledged this principle in Barnello v. AGC Chemicals, Am., Inc., No. 08-3505, 2009 WL 234142 (D.N.J. Jan. 29, 2009). There, Judge Martini explained the difference between a claim to enforce rights created under, or related to, a CBA and a separate and distinct claim brought to enforce generally applicable, individual workers' rights: "Plaintiffs do not seek a determination as to the appropriate wage under the CBA. Instead, Plaintiffs focus on their statutory right to compensation under the FLSA. Not only does the complaint lack any direct reference to the CBA, Plaintiffs explicitly state in their moving papers that they do not claim that they are owed compensation pursuant to the CBA" and further emphasize that their claims stem solely from their alleged statutory right to compensation for time worked under the

11

A recent case from the Seventh Circuit Court of Appeals, which is extremely similar to this case, emphasizes the point. In Spoerle v. Kraft Foods Global, Inc., — F.3d —, 2010 WL 2990830 (7th Cir. Aug. 2, 2010), the court again observed the difference between claims brought as freestanding state law claims, and those that may rely on a collective bargaining agreement. There, the plaintiffs brought claims under both the FLSA and Wisconsin's state wage and hour law to recover compensation for time spent donning and doffing protective clothing and walking to and from work areas. See id. at *1. While the primary issue in the case was whether the FLSA could preempt the Wisconsin state law, the Court also separately addressed the interaction between the CBA and the Wisconsin law. Chief Judge Easterbrook, writing for the court, specifically noted that, regardless of what a CBA might contain, there is no basis for a collectively bargained agreement to preempt or otherwise interfere with state laws of general application:

> As Kraft Foods sees things, Wisconsin is meddling with collective bargaining, so that *federal labor law* preempts state law if [the FLSA] does not do the trick. Yet nothing in the Wisconsin statutes gives a state court, or other state official, any role in interpreting or enforcing a collective bargaining agreement. What Wisconsin law requires is that the collective bargaining agreement be *ignored*, to the extent it sets lower wages or hours than state law specifies . . . Suppose the CBA set a wage of $8 per hour, higher than the current federal minimum wage of $7.25, while Wisconsin law set a minium wage of $8.25. . . . No one would contend that the employer could pay workers $7.25 an hour, even though that is allowed by federal law if labor and management agree.

Id. at *3 (emphasis added).

The court continued by illustrating the difference between collectively bargained agreements and substantive state rights:

> *Nothing that labor and management put in a collective bargaining agreement exempts them from state laws of general application. . .*

---

FLSA . . ., and if applicable, to overtime provided by the FLSA." Id. at *3.

12

> *Management and labor acting jointly (through a CBA) have no power to override state substantive law than they have when acting individually*. Imagine a CBA saying: "Our drivers can travel at 85 mph, without regard to posted speed limits, so that they can deliver our goods in fewer compensable hours of work time." That clause would be ineffectual. And a CBA reading instead that "our drivers can travel at a reasonable rate of speed, no matter what state law provides" would be equally pointless. Making a given CBA hard to interpret and apply (as the word "reasonable" would be) would not preempt state law on the theory that states must leave the interpretation of CBAs to the National Labor Relations Board and the federal judiciary; *states would remain free to enforce laws that disregarded CBAs altogether. That is what Wisconsin does when determining which donning and doffing time is compensable.*

Id. (emphases added).

The only difference between this case and Spoerle is that the Wisconsin law expressly provides for compensation of donning and doffing time, and the New Jersey law does not. However, this difference does not support preemption; rather, it highlights the non-CBA nature of the dispute in this case. The parties here dispute the substance of the New Jersey law. Defendants may well be correct that Plaintiff cannot point to a statutory basis to recover pay for the activities he contends constitute "work." However, the alleged absence of a meritorious basis to bring the claim, or the existence of a potential federal preemption defense, may not be used in an effort to re-plead Plaintiff's Complaint to state a federal claim. See, e.g., Franchise Tax Bd., 463 U.S. at 14 ("[S]ince 1887 it has been settled law that a case may not be removed to federal court on the basis of a federal defense, including the defense of preemption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties admit that the defense is the only question truly at issue in the case.").[5]

---

[5] See also Caterpillar, 482 U.S. at 398-99 ("It is true that when a defense to a state claim is based on the terms of a collective bargaining agreement, the state court will have to interpret that agreement to decide whether the state claim survives. But the presence of a federal question, even a § 301 question, in a defensive argument does not overcome the paramount policies embodied in the well-pleaded complaint rule—the plaintiff is the master of the complaint, and that the plaintiff may, be eschewing claims based on federal law, choose to have the cause heard in state court. When a plaintiff invokes a right created by a collective bargaining agreement, the

In sum, the parties have a dispute over the scope of the NJWHL. That is the ultimate issue in the case, and one a state court is well-equipped to decide. No reference to the CBA is required. No issues of preemption are implicated. None of the cases Defendants rely upon state differently, as all either present claims for recovery based expressly upon rights created by the terms of collective bargaining agreements, not state or federal laws of general application;[6] arise in the defensive preemption context on pre-answer motions to dismiss;[7] or are otherwise distinguishable.[8]

---

plaintiff has *chosen* to plead what we have held must be regarded as a federal claim, and removal is defendant's option. But a *defendant* cannot, merely by injecting a federal question into an action that asserts what is plainly a state law claim, transform the action into one arising under federal law, thereby selecting the forum in which the claim shall be litigated. If a defendant could do so, the plaintiff would be the master of nothing.").

[6] See, e.g., Evermann v. BNSF Ry. Co., 608 F.3d 364, 367 (8th Cir. 2010) (alleged entitlement "arises solely from the terms of the collective bargaining agreement[,]" and thus, "an interpretation of the collective bargaining agreement would be certainly necessary"); Johnson v. NBC Universal, Inc., No. 08-3780, 2009 WL 151673 (D.N.J. Jan. 22, 2009) (claim was brought to enforce rights contained in "deal memos" referenced in, and authorized by, the CBA); Townsend v. BC Natural Chicken, LLC, No. 06-4317, 2007 WL 442386, at **5-6 (E.D. Pa. Feb. 2, 2007) (no independent right to recover under Pennsylvania wage statute; all claims must be brought pursuant to contract, which was collective bargaining agreement).

[7] Andrako v. United States Steel Corp., No. 07-1629, 2008 WL 2020176 (W.D. Pa. May 8, 2008) (12(b)(6) motion; defensive preemption).

[8] Defendants rely heavily upon the Third Circuit's decision in Penn. Fed'n of the Bhd. of Maint. of Way Employees v. Nat'l R.R. Passenger Corp., 989 F.2d 112 (3d Cir. 1993). In that case, the Third Circuit affirmed that federal labor law preempted the plaintiffs' claim for unpaid overtime wages under the Pennsylvania Minimum Wage Act. Id. The plaintiffs in Penn. Fed'n were unionized truckers who claimed that they were entitled to compensation for time spent traveling to and from work. See id. at 114-15. However, Penn Fed'n is distinguishable for at least three reasons. *First*, the case was not removed to federal court on the basis of complete preemption. Rather, it was removed to federal court under 28 U.S.C. § 1349, which provides for jurisdiction over claims against AMTRAK as a federal corporation. See id. at 113-14. *Second*, the case came before the Third Circuit on appeal of the district court's grant of a motion to dismiss; in other words, the preemption question came before the district court in the context, unlike removal, of a *defensive preemption argument*. See id. at 114; see also Penn. Fed'n of the Bhd. of Maint. of Way Employees v. Nat'l R.R. Passenger Corp., No. 91-2776, 1992 WL 165993 (E.D. Pa. June 15, 1992). *Third*, and perhaps most important, in Penn. Fed'n there was a dispute whether the workers were "required to" travel on AMTRAK vehicles to and from work. See 989 F.2d at 115. In the event they were not "required to" travel on AMTRAK vehicles, they

14

**E.     No Diversity Jurisdiction**

There is no dispute that Plaintiff is a citizen of the State of New Jersey and that the individual named Defendants, Mr. Chamberlain and Ms. Durst, are also citizens of the State of New Jersey. As such, on the face of the complaint, there is a lack of diversity jurisdiction. See Wis. Dep't of Corr. v. Schacht, 524 U.S. 381, 389 (1994) (stating that federal diversity jurisdiction is present "only if there is no plaintiff and no defendant who are citizens of the same state"); Grand Union Supermarkets of the V.I., Inc. v. H.E. Lockhart Mgmt., Inc., 316 F.3d 408, 410 (3d Cir. 2003).

Because the parties are not completely diverse, defendants can remain in federal court only if they can establish that the New Jersey Defendants were fraudulently joined to destroy diversity. Batoff v. State Farm Ins. Co., 977 F.2d 848, 851 (3d Cir. 1992); Abels v. State Farm Fire & Cas. Co., 770 F.2d 26, 29 (3d Cir. 1985). Proving fraudulent joinder comes with a "heavy burden of persuasion." Batoff, 977 F.2d at 851 (quotation omitted).

**1.     Fraudulent Joinder Standard**

Fraudulent joinder is about frivolousness. A court assumes as true all factual allegations of the complaint, see Steel Valley Auth., 809 F.2d at 1010, and deems joinder fraudulent only when "there is no reasonable basis in fact or colorable ground supporting the claim against the joined

---

would not be entitled to overtime compensation under the state law. Id. at 115. Here, unlike in Penn Fed'n, there is no real dispute that Plaintiff, and all putative class members, are obligated to perform the activities for which they seek compensation— *i.e.*, don and doff protective equipment, walk to and from shifts, and confer with other workers. Thus, here, unlike Penn. Fed'n, there is no need to interpret the CBA to ascertain whether the Plaintiff and putative class members are required to engage in the activities for which they seek compensation. They clearly are. Rather, the issue here is whether they are entitled to compensation for those activities under the NJWHL.

Likewise, Defendants' reliance on another Third Circuit case, Turner v. City of Philadelphia, 262 F.3d 222 (3d Cir. 2001), is misguided. In Turner, the Third Circuit held that Section 203(o) of the FLSA barred the plaintiffs' claims for overtime pay. Id. at 227. Section 203(o) of the FLSA provides, *inter alia*, that, through custom or practice under a CBA, time spent changing clothes may be excluded from an employee's hours worked. However, Turner is not helpful because the NJWHL does not contain an exemption similar to 203(o).

15

defendant, or no real intention in good faith to prosecute the action against the defendant or seek a joint judgment." Batoff, 977 F.2d at 851. For fraudulent joinder to attach, the claim must be "wholly insubstantial and frivolous." Id. at 852.

In conducting its analysis, a court is not limited to the pleadings and may look beyond the pleadings "to identify indicia of fraudulent joinder." In re Briscoe, 448 F.3d 201, 219 (3d Cir. 2006). However, "a district court must not step 'from the threshold jurisdictional issue into a decision on the merits'" Id. (quoting Boyer v. Snap-on Tools Corp., 913 F.3d 108, 112 (3d Cir. 1990)). Therefore, although a court may pierce the pleadings in ascertaining whether joinder is fraudulent, it must be mindful that "the inquiry into the validity of the complaint triggered by a motion to dismiss under Rule 12(b)(6) is more searching than that permissible when a party makes a claim of fraudulent joinder." Batoff, 977 F.2d at 852. Ultimately, "[i]f there is even a possibility that a state court would find that the complaint states a cause of action against one of the resident defendants, the federal court must find that joinder was proper and remand the case to state court." Boyer, 913 F.2d at 111 (quotation omitted).[9]

### 2. **Defendants Have Not Met Their Burden**

Defendants' fraudulent joinder argument is limited to the following sentence: "It strains belief

---

[9] Following removal, requests to amend pleadings that result in the destruction of federal jurisdiction normally require consideration of numerous equitable factors (referred to as the Hensgens factors). See City of Perth Amboy v. Safeco Ins. Co. of Am., 539 F. Supp. 2d 742, 746, 752 (D.N.J. 2008) (referring to factors identified in Hensgens v. Deere & Co., 833 F.2d 1179, 1182 (5th Cir. 1987)). However, when the amendment of a pleading is made *as of right*, as was Plaintiff's amendment in this case, the court does not a consider the merits of the amendment. See, e.g., City of Perth Amboy, 539 F. Supp. 2d at 754 n.2 (citing Conover v. United Parcel Service, No. 06-1079, 2006 WL 3534157, at *1 n.2 (D.N.J. Dec. 7, 2006)); Sunset Financial Resources, LLC v. Redevelopment Group V, LLC, 417 F. Supp. 2d 632, 641 n.14 (D.N.J. Feb. 24, 2006). Thus, Defendants properly focus their argument solely on fraudulent joinder. Nevertheless, in the event consideration of the Hensgens factors was somehow appropriate, the Court would deem the amendment proper.

that [Plaintiff] and his purported 'class' genuinely intend to hold any individual Hess employee personally liable for implementing or enforcing policies and practices of the CBA which have been in place for more than half a century." (Defs.' Br. 20.) This conclusory statement falls far short of meeting Defendants' "heavy burden" to establish the individual defendants were fraudulently joined. Defendants do not challenge the sufficiency of the pleadings or the legal theories asserted against the individual Defendants. Moreover, Defendants' argument completely ignores that one Defendant, Ms. Durst, was named as a defendant on Plaintiff's individual discrimination claim, not the NJWHL claim. In all events, Plaintiff's Amended Complaint contains sufficient allegations to defeat any fraudulent joinder argument. See, e.g., Mersmann v. Continental Airlines, 335 F. Supp. 2d 544, 556 (D.N.J. 2004) (Greenaway, J.) (rejecting fraudulent joinder argument when case was in early stages and claim under the NJ LAD was pleaded in good faith). Therefore, this Court does not have diversity jurisdiction over this case.

## CONCLUSION

For the above stated reasons, it is respectfully recommended that Plaintiff's motion to remand be **granted**.

s/Mark Falk<br>
**MARK FALK**<br>
**United States Magistrate Judge**

Dated: September 1, 2010